[No. S014933. Dec. 24, 1990.]

CHARLOTTE R. STERNLIEB, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

318

COUNSEL

Pansky & Markle and Ellen A. Pansky for Petitioner.

Diane C. Yu, Richard J. Zanassi, Lawrence C. Yee and Susan Leventhal for Respondent.

OPINION

THE COURT.—In this matter we review the recommendation of the Review Department of the State Bar Court that petitioner Charlotte R. Stern-

lieb be suspended from the practice of law for a period of two years, with that suspension stayed and petitioner placed on probation for a period of two years with an actual suspension of one hundred and twenty days as a condition of that probation.

The recommendation is based on the review department's finding that petitioner misappropriated $4,066 of funds belonging to a client and the client's spouse in willful violation of Business and Professions Code section 6106, and former rules 8-101(B)(3) and 8-101(B)(4) of the Rules of Professional Conduct.[1] The hearing department, a single referee, found that petitioner had misappropriated funds in willful violation of former rule 8-101(B)(4), but recommended only private reproval.

We conclude that the findings of the review department, which led to the determination that petitioner misappropriated client trust funds and failed to properly account for trust funds, are supported by the record, and that discipline is appropriate. We also conclude, however, that the record does not support the review department's finding that petitioner acted "dishonestly" and thus its conclusion that she violated section 6106 cannot be sustained. Her mishandling of client funds did constitute misappropriation, however, and thus violated former rule 8-101(A), which although not expressly charged was clearly encompassed in the section 6106 charge as stated in the allegations in support of that charge.

On consideration of the nature and circumstances of the misconduct, and the measures taken by petitioner to avoid repetition, we conclude that a 30-day suspension, as a condition of a one-year period of probation supervision, is adequate to deter future misconduct.

---

[1] All references to statutes are to the Business and Professions Code. References to rules are to the former Rules of Professional Conduct which were in effect at the time of the incidents giving rise to this proceeding, unless otherwise indicated. New Rules of Professional Conduct became operative on May 27, 1989. New rule 4-100 of the Rules of Professional Conduct incorporates the substance of former rule 8-101.

Section 6106: "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension.

"If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to disbarment or suspension from practice therefor."

Former rule 8-101 mandated, inter alia, that an attorney establish a trust account into which any funds held for, or on behalf of, a client were to be deposited; promptly notify a client that such funds had been received; maintain complete records of all such funds and render accounts to the client; and promptly pay or deliver funds to which the client was entitled.

## I

Petitioner was admitted to membership in the State Bar on June 28, 1977, and has no prior record of discipline. She has been certified as a specialist in family law since August 1982.

This matter arises out of petitioner's representation of Beverly Red in a dissolution matter. In a notice to show cause issued on March 8, 1988, the State Bar Court alleged in substance that petitioner had held tenant security deposits and rental money received from tenants of the married couple's residence in her client trust account, from which no funds were to be withdrawn for purposes other than upkeep of the property; had withdrawn funds from the account for her own use without authorization; had failed to indicate those withdrawals in an accounting she provided to Ms. Red; and that petitioner had told Ms. Red that the balance in the account was being taken for attorney fees and costs, although there had not been an agreement with the client that funds could be taken from the account for fees.

A. *Review Department Findings of Fact.*

Ms. Red paid $2,000 to petitioner on September 9, 1985, as an advance fee for services that were to be rendered at an hourly rate of $125. Petitioner had insisted that Ms. Red make advance payments or, at a minimum, keep her account current. Ms. Red paid another $1,000 on March 3, 1986, but told petitioner that her mother would not advance additional fees until the dissolution was concluded.

Petitioner and counsel for Ms. Red's husband agreed to modify a court order to permit Ms. Red to rent the community property residence for $1,000 per month; to deposit the rental income in a trust account to be opened by Ms. Red for that purpose; to make necessary payments from the account for upkeep and maintenance of the property; and to hold any remaining money in trust for both parties pending further agreement or order of the court. Ms. Red was to account for the funds received and disbursed.

The parties orally modified the agreement to permit petitioner to receive and disburse the funds pending disposition of the dissolution proceeding. On final disposition, petitioner was to provide an accounting reflecting the monthly receipts and disbursements.

Petitioner did not provide an accounting to counsel for Mr. Red.

Petitioner testified that at the end of February 1986, time and charges had totalled 36.16 hours or $4,645; that Ms. Red had paid $2,000; that $2,645

was due; and that petitioner and Ms. Red then agreed that petitioner could receive her fees from the funds in the trust account. Ms. Red denied that she had agreed that petitioner could deduct her fees from the funds in the trust account.[2]

The evidence clearly and convincingly showed that petitioner had begun taking money from the trust account and applying it to her fee before the date on which she and Ms. Red allegedly agreed that she could do so.

The funds in the trust account constituted community property and could not legally be used for any purpose other than those purposes agreed upon by both Mr. Red and his attorney, or by order of the court.

Petitioner misappropriated $4,066 of funds in her trust account, including $2,066 of Mr. Red's community property, and $2,000 in renters' security deposits.

B. *Petitioner's Objections to Findings of Fact.*

Petitioner contends that the following findings are not supported by the evidence or are otherwise erroneous:

1. The finding that petitioner began applying trust funds to her fees prior to the date of the alleged agreement with Ms. Red allowing her to do so.

2. The finding that $4,066 was misappropriated from the trust account, as the gravamen of the charge is that she unilaterally determined and withheld fees.

3. The finding that she failed to provide an accounting to opposing counsel, since this was not charged in the notice to show cause and the uncontroverted evidence was that no such accounting was requested.

4. The finding that petitioner acted dishonestly, which is contrary to the finding of the trier of fact.[3]

---

[2] Although a recital of evidence rather than a factual finding, this testimony is included as items 9 and 10 of the review department's "Findings of Fact."

[3] The review department made no formal finding that petitioner acted "dishonestly" in the findings in support of its conclusions of law. It did find that the misappropriation was "willful." The review department identified as an aggravating factor, however: "Respondent's misappropriation of community funds belonging to William Red and of the security deposits of renters involved dishonesty."

II

### EVIDENCE AND FINDINGS ON CULPABILITY

■ Petitioner bears the burden of establishing that the findings of the review department are not supported by the record. (*Garlow* v. *State Bar* (1988) 44 Cal.3d 689 [244 Cal.Rptr. 452, 749 P.2d 1307].) ■ While we make an independent review of the evidence, when credibility of witnesses is important we accord great weight to the findings of fact of the hearing department, which is in a better position than the review department to resolve conflicts in the evidence. (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1216 [270 Cal.Rptr. 315, 791 P.2d 994].) ■ The charges against an attorney must be supported by convincing proof and to a reasonable certainty; inferences leading to a conclusion of innocence must be drawn if equally reasonable but conflicting inferences may be drawn from the evidence. (*Skelly* v. *State Bar* (1973) 9 Cal.3d 502, 508-509 [108 Cal.Rptr. 6, 509 P.2d 950].)

Although petitioner disputes the sufficiency of the evidence to support the findings of the State Bar Court, and the propriety of the review department's de novo redetermination of facts based on disputed evidence in which the credibility of the witnesses was in issue, we conclude that undisputed evidence clearly supports the finding that petitioner misappropriated funds in violation of the Rules of Professional Conduct.

We also conclude that, if, as petitioner testified, she believed that her use of client trust funds was authorized by her client, and that her client had the power to give such authorization, that belief was unreasonable.

Prior to the date on which petitioner commenced her representation of Ms. Red, the court in which the dissolution action was pending had ordered that the family residence, which was the community property of Ms. Red and her husband, be listed for sale and that some child support payments to be made by Mr. Red should accrue and be payable from the proceeds of the sale. The order also provided that if the home had not been sold by November 1, 1984, it was to be immediately listed for rent, and that while rented the parties would be jointly liable for related expenses, and the rental payments would be placed in a joint account and utilized for those expenses, with the balance to be divided equally upon sale of the property. Proceeds of the sale were to be placed in an interest bearing trust account by Ms. Red's counsel, to be distributed by counsel for Ms. Red pursuant to a written agreement or order of the court.

Counsel for the parties subsequently agreed first that the account would be opened and administered only by Ms. Red, and then, in January 1986,

that petitioner would deposit the rents in, and make disbursements for related expenses from, her client trust account.

On July 21, 1986, Ms. Red and her husband stipulated, in writing, to a division of property, thereby giving the residence and the funds deposited in the trust account after January 12, 1986, the date of the final decree of dissolution, to Ms. Red. That stipulation was incorporated in substance into a final judgment on August 27, 1987.

No evidence was presented that prior to the July 21, 1986, stipulation Mr. Red, his attorney, or the court authorized the use by either Ms. Red or petitioner of any rents in the trust account for any purpose other than upkeep, maintenance, and expenses related to the residence agreed on by Mr. Red and petitioner's client.

Undisputed evidence establishes that opposing counsel was unaware that tenant security deposits had been deposited in the account, and did not agree to the withdrawal of any sums from the trust account for other than the specified purposes, and did not know that such withdrawals were being made.

Undisputed evidence also establishes that petitioner made numerous withdrawals from the Red money in the trust account to pay herself fees commencing on February 5, 1986, and continuing through August 29, 1986.

Petitioner's argument, that she reasonably believed she had authority to apply Red trust funds to fees, is largely irrelevant since, as the review department and the referee agreed, the withdrawals commenced prior to the time at which petitioner could have believed that Ms. Red agreed to payment of legal fees in this manner. Even assuming that petitioner believed Ms. Red had done so, however, no evidence suggests a basis for believing that Mr. Red or his attorney had sanctioned this use of the trust funds remaining after payments of expenses prior to trial or settlement of the case.

Petitioner acknowledged that she had written checks, drawn on the trust account, to pay herself fees in the Red matter in the following amounts:

February 5, 1986: $1,000
February 5, 1986: $250
February 14, 1986: $65 (of a $100 check)
March 1, 1986: $350.59
March 3, 1986: $180
March 11, 1986: $275
March 14, 1986: $100

April 17, 1986: $400 (of a $430 check)
May 6, 1986: $50[4]
May 14, 1986: $377.86[5]
July 1, 1986: $1,558 (of a $2,580 check)
July 16, 1986: $500 (of a $700 check)
August 1, 1986; $900
August 29, 1986: $4,132.

Petitioner's only basis for claiming that she was authorized to withdraw those community property funds from the trust account was an agreement that Mr. Red would be given "credit against setoffs" for support payments he owed Ms. Red. Although she testified that Ms. Red had authorized payment of fees out of the money in the account, the only indication of the date of this conversation is petitioner's testimony that "toward the end of February" Ms. Red told petitioner that Ms. Red's mother would pay petitioner another $1,000 and "I agreed that since I could be paid out of the trust pending [the end of the case]" Ms. Red would not have to pay more until then. Petitioner's billing records reflect no office visit with Ms. Red during February prior to February 25, 1990, and reflect the first telephone contact as being on February 7 to discuss a bill related to the septic tank.

Petitioner acknowledged that the August 29, 1986, check drawn on the trust account and payable to herself for $4,132 was a payment for fees. She deposited $4,000 of her own money in the account to cover that check. She explained that "it was actually a way of accounting for the fees already paid, I guess would be more proper," and was actually a "redeposit" so that one check would reflect the total fees paid. An accounting petitioner provided to Ms. Red on August 29, 1986, did not reflect petitioner's earlier payments of fees to herself from the trust account. Petitioner denied that she intended to give Ms. Red the impression that petitioner took her fees in a lump sum at that time, which was after the settlement and award of the monies in the account to Ms. Red.

Petitioner conceded that she had never advised Ms. Red in writing that she had taken fees from the trust account. She listed the fees as an

[4] Although petitioner acknowledged this among the checks for fees paid to herself, she testified that her secretary had typed and signed this check, which also bore a typewritten notation of the name of petitioner's son, without petitioner's knowledge or authorization.

[5] Petitioner testified that this check was also written by her secretary without her knowledge or authorization while petitioner was away. The secretary wrote the check to pay herself her salary, and was gone when petitioner returned and discovered the withdrawal. Petitioner then credited it to the fees in the Red matter.

Petitioner discovered these and other manipulations in the account when she returned, after a week out of the office, and learned that another client had paid $2,500 in cash to the secretary, and that no deposit had been made to petitioner's general account. Petitioner then examined the bank statements, discovered the additional checks, and decided that since she had to take the loss, she would credit it to the Red fees.

"end-of-case accounting" in the August 29, 1986, account because that would "cause me less problems in the accounting," and said that Ms. Red had known that petitioner had been paid all along.

Petitioner explained that she believed her client had authority to authorize use of the trust funds because Mr. Red owed more in support arrearages, taxes, insurance, and payments on the trust deeds than would ever be collected in rent. She had not discussed the amount of the arrearages or the use of the trust fund with opposing counsel, but at the time she began receiving the $1,000 per month rent, Mr. Red owed close to $15,000.

Richard Beswick, a certified specialist in family law who represented Mr. Red in the dissolution proceeding, testified that when the residence was finally rented, petitioner maintained the trust account and he assumed the rents were deposited in the account.

At no time prior to July 21 did Beswick understand that the rental money would not have to be held in trust. He had no discussion regarding a setoff of any arrearages in Mr. Red's child or spousal support payments against the trust funds and he had made no commitment to permit a setoff. He did not give petitioner permission to take money from the trust account to pay her fees and she had not asked him for such permission. He was not aware that the tenants of the residence had paid security deposits which had been placed in the trust account.

Beverly Red testified that she understood that two $1,000 tenant security deposits which had been deposited in petitioner's client trust account were to be held, that the cost of any damages were to be taken out, and that the balance was to be returned to the tenants when they moved out. Ms. Red had no discussions with petitioner regarding use of the security deposits for any other purpose. She had no discussion or communication with petitioner prior to the July 21, 1986, court date, regarding taking money out of the trust fund for fees. Ms. Red never told petitioner or suggested that petitioner could do so.

Ms. Red was certain that she had not agreed to use of the money in the trust account for payment of legal fees, because the money in the trust fund was earmarked for house payments and prior to the July 21, 1986, settlement half of the money belonged to Red's ex-husband. Ms. Red made no such agreement with petitioner prior to July 21, or on that date, or at any time prior to August 4, 1986, when she requested that the money in the trust account be paid to her at once.

## A. Hearing Department Findings.

The referee found that until July 26, 1986, when a settlement was reached in the dissolution proceeding, the money held for Red in petitioner's trust account was the community property of Beverly Red and William Red.

The referee was impressed with petitioner's credibility, and had "serious doubts" as to the credibility of Ms. Red in the conflicting testimony regarding the existence of an agreement that petitioner's fees could be paid from the trust funds. He concluded, nonetheless, that the existence of the disputed agreement was not material to culpability because there was clear and convincing evidence that petitioner had begun taking money from the trust funds and applying it to her fee prior to time that agreement was, allegedly, made. In addition, because the trust funds were community property, they could not be used for any purpose other than that agreed upon by Mr. Red and his attorney.

The referee accordingly found that during the six-month period in which the house was rented, petitioner collected and placed in her trust account $8,872.43 of money belonging to the Reds, and that there were expenses of approximately $2,740.36. Of the remaining funds, petitioner sent Ms. Red only the $2,000 in security deposits; on August 1, 1986, when that check was sent, there was under $1,000 in the account. Petitioner had been withdrawing money for herself since "in or about February 1986," and on or about August 4, 1986, and August 29, 1986, petitioner had replaced money into the trust account. The accounting sent to Ms. Red on August 29, 1986, did not include the amounts petitioner had been withdrawing between February 1986 and August 1986.

Ms. Red had requested an accounting several times prior to August 1, 1986, and petitioner had failed to provide one. Although petitioner had agreed to provide an accounting of the trust moneys to opposing counsel on final disposition of the case, none was provided. It was logical to assume that this subject became moot when the case was settled.

The referee concluded that in committing these acts petitioner misappropriated funds in her trust account, and was in willful violation of former rule 8-101(B)(4), regardless of her state of mind at the time.

## B. Review Department Findings.

The review department did not adopt the findings of the referee, but its findings with regard to the agreement with opposing counsel, that petitioner receive and disburse the rent moneys, holding the remainder in trust, and

that petitioner provide an accounting, are consistent with those of the referee.

The review department also declined to make a finding on the existence of an agreement permitting petitioner to receive her fees from the trust account. It, too, found that petitioner had begun taking funds held for the Reds out of the trust account to apply to fees prior to the date on which Ms. Red allegedly agreed that she could do so. Those funds were community property that could not legally be used for any purpose other than one agreed upon by both William Red and his attorney, unless otherwise ordered by the court.

C. *Review Department Conclusions of Law.*

The review department concluded that petitioner had misappropriated $4,066 of funds in willful violation of section 6106, and former rules 8-101(B)(3) and 8-101(B)(4).

### III

#### SUFFICIENCY OF EVIDENCE

■ The notice to show cause clearly and sufficiently alleged misappropriation, not simply that petitioner had unilaterally determined and withheld fees. The finding of the review department, that petitioner misappropriated client trust funds, is supported by the record. Neither petitioner's testimony, nor her records, would support a conclusion that she had received or reasonably believed she had received authorization from Ms. Red to use the trust funds for payment of legal fees when petitioner withdrew $1,250 from her client trust account on February 5, 1986, and $65 on February 14, 1986. Nor would the evidence support a conclusion that Mr. Red and/or Mr. Beswick had authorized any use, prior to the end of the case, of the trust funds remaining after expenses. The understanding that Mr. Red would have a credit against the support payments he owed is not, and cannot reasonably be understood as, an agreement that Ms. Red could use the funds or authorize their use by petitioner prior to the termination of the dissolution proceeding.

We conclude that the evidence supports the finding that petitioner misappropriated funds she held in trust for both her client and Mr. Red, that she failed to maintain proper records, and that she failed to account for the funds.

The review department's conclusion that $4,066 was misappropriated apparently includes the $2,000 in security deposits, and one-half of the balance of the rent moneys after payment of authorized expenses. We infer, since neither the referee nor the review department found it necessary to resolve the conflict in the evidence on whether Ms. Red authorized the use of trust funds for fees, that the review department based its misappropriation finding on the absence of any evidence that Mr. Red had authorized use of his one-half of the rent moneys for a purpose other than expenses related to the property and/or community bills, and an assumption that neither party could authorize use of the funds received from the renters as security deposits.[6]

The evidence clearly reflects misappropriation of $1,250 on February 5, 1986, and $65 on February 14, 1986, at which time neither Ms. Red nor her husband *could reasonably be understood to have authorized use of the trust monies for any purpose other than expenses related to the rental of the family residence and specified bills.* The evidence establishes that Mr. Red had not authorized application of his one-half community interest in the remaining trust funds to other purposes prior to the settlement reached on July 21, 1986. Between February 14, 1986, and July 16, 1986, and excluding the allegedly unauthorized withdrawals by petitioner's secretary on May 6 and May 14, petitioner withdrew $3,363.59 from the trust account for fees. ■ ■ ■ ■ Assuming therefore that Ms. Red could and had authorized the use of her community interest in the trust funds for fees at the end of February 1986, petitioner misappropriated $1,315 of community funds prior to receiving that authorization, and subsequently misappropriated $1,682 of funds subject to the control of Mr. Red,[7] a total of $2,997.

The difference in the total is irrelevant as to whether funds were misappropriated or the discipline to be imposed in this case. The evidence establishes violations of former rules 8-101(A), 8-101(B)(3) and 8-101(B)(4).

[6] That assumption regarding the use of tenant security deposits may not be warranted. Civil Code section 1950.5, which governs payments made by residential tenants as security for rent or against damages, requires that security deposits be returned at the termination of the tenancy, after lawful deductions. It does not require that the landlord hold the funds in trust during the tenancy, however. Nonetheless, if such funds need not be held in trust for the tenants, they would also be subject to community control.

[7] Although petitioner did not represent Mr. Red, in receiving his community share of the rental income and the security deposits and in holding them in her client trust account she assumed the obligation of a fiduciary to him as well as to Ms. Red. (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 979 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1].)

She therefore had a duty to provide an accounting to him and/or his counsel. There is merit in petitioner's claim that a failure to do so was not alleged in the notice to show cause. Therefore the finding that she did not account to counsel for Mr. Red will not be considered.

## IV

### MITIGATING EVIDENCE/APPROPRIATE DISCIPLINE

 A State Bar recommendation regarding discipline is entitled to great weight, but this court must exercise its independent judgment as to appropriate discipline. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 933 [258 Cal.Rptr. 235, 771 P.2d 1323].) In doing so we bear in mind that the principal purpose of disciplinary proceedings and the imposition of sanctions is to protect the public by ensuring to the extent possible that misconduct by an attorney will not recur. (*Baker* v. *State Bar* (1989) 49 Cal.3d 804, 823 [263 Cal.Rptr. 798, 781 P.2d 1344].)

Evidence offered by an attorney in mitigation of misconduct must be considered in light of that purpose. "[T]he circumstances in which the misconduct occurred or subsequent efforts by the attorney to correct the condition that precipitated the misconduct may demonstrate that the misconduct will not likely recur" (*Baker* v. *State Bar, supra,* 49 Cal.3d 804, 822, fn. 7) and thus are relevant to the disciplinary sanctions, if any, to be imposed. We consider the evidence here in that context.

██ Both the referee and the review department found petitioner's testimony credible, but avoided deciding whether she reasonably believed that she had authority to apply the trust moneys to her legal fees. We have concluded that any such belief would not have been reasonable. For that reason we do not consider that belief to be mitigating.

However, petitioner has no prior record of discipline. Numerous witnesses, judges before whom petitioner has appeared and attorneys familiar with her practice, testified that her reputation is excellent and that she is among the best family law attorneys in the Riverside area. Attorney Beswick, who represented Mr. Red, stated in a declaration that, notwithstanding the finding of culpability here, he had never doubted petitioner's integrity.

Carver Honn, the Riverside County Superior Court domestic relations department commissioner, testified that he knew the attorneys appearing in that department on a professional basis and that petitioner's reputation is among the highest. He had never heard an attorney say anything critical about petitioner. In his mind, petitioner deserved this reputation. From his discussions with petitioner, Commissioner Honn found it evident that petitioner was very seriously affected by the proceedings, expressed regret and remorse that she had become involved in a disciplinary proceeding, and in the future would ensure that there would be no misunderstanding with a

client regarding a trust account. He was satisfied that the problems occurring in the Red case would not recur. Notwithstanding the findings of the referee, he believed that petitioner's culpability was unintentional, and that she had no intent to overreach.

Judge John Ingro, a judge of the San Bernardino County Superior Court before whom petitioner had appeared in 15 to 17 domestic relations matters, testified that petitioner's professional reputation and reputation for honesty were excellent. In his opinion, she had the highest reputation of good character. His opinion had not been changed by his review of the materials related to the Red matter.

Evidence of petitioner's pro bono work in the community was received.

Petitioner's present secretary, who has extensive experience in office management, testified regarding office procedures which had been implemented to prevent any recurrence of irregularity in the handling of the client trust account. Daily logs of deposits and withdrawals are kept, and statements reflecting the trust account balance and the fees due are sent to clients each month. Retainer agreements are now reduced to writing.

This evidence led the referee, who found that petitioner's misconduct was the result of "negligent inadvertence," to conclude that recurrence was not likely. He therefore concluded that suspension was not only unnecessary, but would unduly injure both petitioner and the public.

The review department found, by contrast, that petitioner's misappropriation of community funds "involved dishonesty" and that petitioner had concealed her misappropriation from Ms. Red. The review department recognized the mitigating evidence, and noted that petitioner had cooperated fully with the State Bar, but concluded that the aggravating factors warranted greater discipline.

Although the evidence does not support the review department's finding that petitioner acted "dishonestly," it also fails to support the claim that her belief, that she was authorized to use client trust funds for the payment of fees, was reasonable. ■ Moreover, the good faith of an attorney is not a defense to a charge of misappropriation, even if no person is injured by the attorney's failure to manage trust funds in the manner designated by former rule 8-101. Discipline may be warranted even if the mismanagement was neither fraudulent nor willful. (*Guzzetta* v. *State Bar, supra,* 43 Cal.3d 692, 976; *Heavey* v. *State Bar* (1976) 17 Cal.3d 553, 558 [131 Cal.Rptr. 406, 551 P.2d 1238].)

■ Petitioner has expressed remorse that she has become involved in a disciplinary proceeding, and she has taken steps to establish office procedures which will avoid the practices that contributed to her violation of the Rules of Professional Conduct. Nonetheless, because supervision will serve to protect the public by ensuring that the changes she had made in her office procedures are adequate, we adopt the recommendation of the review department that petitioner serve a period of probation.[8] We conclude, however, that a one-year period of probation supervision with a thirty-day actual suspension is adequate to serve this purpose.

## IV

## DISPOSITION

It is ordered the Charlotte R. Sternlieb be placed on probation under the terms and conditions recommended by the Review Department of the State Bar Court, as modified to delete the two-year suspension, to impose a probationary period of one year, and to include as a condition thereof actual suspension for a period of thirty days.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

## APPENDIX

## CONDITIONS OF PROBATION

FURTHER RESOLVED that the Review Department recommends to the Supreme Court that the Respondent, Charlotte R. Sternlieb, be suspended from the practice of law in the State of California for a period of two (2) years; that execution of the order for such suspension be stayed; and that Respondent be placed upon probation for said period of two (2) years upon the following conditions:

1. That during the first one hundred twenty (120) days of said period of probation, she shall be suspended from the practice of law in the State of California;

---

[8] A copy of the recommended conditions of probation is attached hereto as an appendix.

2. That during the period of probation, she shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California;

3. That during the period of probation, she shall report not later than January 10, April 10, July 10 and October 10 of each year or part thereof during which the probation is in effect, in writing, to the Office of the Clerk, State Bar Court, Los Angeles, which report shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, she shall file said report on the due date next following the due date after said effective date):

(a) in her first report, that she has complied with all provisions of the State Bar Act, and Rules of Professional Conduct since the effective date of said probation;

(b) in each subsequent report, that she has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period;

(c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph certifying to the matters set forth in subparagraph (b) hereof;

4. That if she is in possession of clients' funds, or has come into possession thereof during the period covered by the report, she shall file with each report required by these conditions of probation a certificate from a Certified Public Accountant or Public Accountant certifying:

(a) That Respondent has kept and maintained such books or other permanent accounting records in connection with her practice as are necessary to show and distinguish between:

(1) Money received for the account of a client and money received for the attorney's own account;

(2) Money paid to or on behalf of a client and money paid for the attorney's own account;

(3) The amount of money held in trust for each client;

(b) That Respondent has maintained a bank account in a bank authorized to do business in the State of California at a branch within the State of California and that such account is designated as a "trust account" or "client's funds account";

(c) That Respondent has maintained a permanent record showing:

(1) A statement of all trust account transactions sufficient to identify the client in whose behalf the transaction occurred and the date and amount thereof;

(2) Monthly total balances held in a bank account or bank accounts designated "trust account(s)" or "client's funds account(s)" as appears in monthly bank statements of said account(s);

(3) Monthly listings showing the amount of trust money held for each client and identifying each client for whom trust money is held;

(4) Monthly reconciliations of any differences as may exist between said monthly total balances and said monthly listings, together with the reasons for any differences;

(d) That Respondent has maintained a listing or other permanent record showing all specifically identified property held in trust for clients;

5. That Respondent shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Respondent shall promptly review the terms and conditions of her probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, Respondent shall furnish such reports concerning her compliance as may be requested by the probation monitor referee. Respondent shall cooperate fully with the probation monitor to enable him/her to discharge his/her duties pursuant to rule 611, Rules of Procedure of the State Bar;

6. During the period of probation, Respondent shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, her current office or other address for State Bar purposes and all other information required by that section. Respondent shall report to the membership records office of the State Bar all changes of information as prescribed by said section 6002.1;

7. That, except to the extent prohibited by the attorney client privilege and the privilege against self-incrimination, she shall answer fully, promptly and truthfully to the Presiding Referee of the State Bar Court, his designee or to any probation monitor referee assigned under these conditions of probation at the Respondent's office or an office of the State Bar (provided, however, that nothing herein shall prohibit the Respondent and the Presiding Referee, designee or probation monitor referee from fixing another place by agreement) any inquiry or inquiries directed to her personally or in writing by said Presiding Referee, designee, or probation monitor referee relating to whether Respondent is complying or has complied with these terms of probation;

8. That the period of probation shall commence as of the date on which the order of the Supreme Court herein becomes effective;

9. That at the expiration of said probation period, if she has complied with the terms of probation, said order of the Supreme Court suspending Respondent from the practice of law for a period of two (2) years shall be satisfied and the suspension shall be terminated.