[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 544.]

IN RE ORIGINAL GRAND JURY INVESTIGATION.

[Cite as *In re Original Grand Jury Investigation*, 2000-Ohio-170.]

*Attorneys at law—Where attorney receives physical evidence from a third party relating to a possible crime by client, attorney is obligated to relinquish that evidence to law-enforcement authorities and must comply with a subpoena issued to that effect.*

(No. 99-1658—Submitted May 9, 2000—Decided September 6, 2000.)

APPEAL from the Court of Appeals for Lucas County, No. L-98-1146.

_____

{¶ 1} Appellant Jeffrey Helmick was lead defense counsel representing defendant Douglas Coley in a capital trial. During the trial, an investigator retained by Helmick discovered the existence of a threatening letter. The letter, which was written by Coley to his brother, was in the possession of Coley's mother, Victoria Coley. Victoria Coley reluctantly gave the letter to the investigator, who in turn gave it to Helmick.

{¶ 2} Since the letter contained threats against others, Helmick contacted Jonathan Marshall, Secretary of the Board of Commissioners on Grievances and Discipline of the Supreme Court, for advice on whether he had an obligation to report the matter. Marshall opined that Helmick should report the matter. Helmick telephoned the presiding trial judge and read the letter to her. The judge then contacted the police. Helmick told a detective the salient facts in the letter so that the detective could understand the nature, severity, and breadth of the threats contained in the letter. Helmick states that he also filed a motion to withdraw as defense counsel, which the trial court granted.

**{¶ 3}** Thereafter, a subpoena was issued to Helmick asking him to appear before the grand jury and to bring with him "any letter(s), correspondence, or writing(s) of any types, including envelopes, originals and/or copies thereof, written by or purportedly authored by Douglas Coley, aka MiMi, which led to or served as a basis for Douglas Coley's trial counsel requesting leave to withdraw as his legal counsel." Helmick refused to comply with the subpoena. Instead, through counsel, Helmick filed two motions to quash the subpoena. Helmick argued that the subpoena should be quashed because otherwise his attorney-client relationship, work-product privilege, and Fifth Amendment rights would be violated. Helmick also argued that compliance with the subpoena would violate his obligations under the Code of Professional Responsibility.

**{¶ 4}** The trial court overruled Helmick's motions to quash and ordered him to comply with the subpoena. Helmick refused to do so. The trial court conducted a show cause hearing and held Helmick in civil contempt under R.C. 2705.02. The court also imposed an ongoing daily fine of $25 until he complied with the order. The sanction was stayed pending appeal.

**{¶ 5}** The court of appeals affirmed that part of the trial court's decision holding that appellant had an obligation to relinquish the document to the grand jury. However, the court vacated the contempt finding contingent upon appellant's filing a notice of appeal to this court or upon appellant's relinquishment of the letter to the grand jury.

**{¶ 6}** The cause is now before this court upon the allowance of a discretionary appeal.

—————————

*Fritz Byers*, for appellant.

*Julia R. Bates*, Lucas County Prosecuting Attorney, *Dean P. Mandross* and *Brenda J. Majdalani*, Assistant Prosecuting Attorneys, for appellee.

—————————

2

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} The issue presented in this case is whether an attorney can be compelled to disclose to the grand jury a letter written by a client and discovered by an investigator that contains evidence of a possible crime or whether the Ohio Code of Professional Responsibility prohibits such disclosure.

{¶ 8} At the outset, we understand that appellant was faced with an ethical dilemma and had the difficult decision of determining how to respond to the competing challenges of maintaining client confidentiality and preserving the safety concerns of the public. We appreciate that appellant confronted the problem head-on by first asking the Secretary of the Board of Commissioners on Grievances and Discipline of the Supreme Court for advice on whether he had an obligation to report a possible crime and then by heeding that advice by reporting the matter to the court and cooperating with the police. Nevertheless, for the reasons that follow, we find that appellant must comply with the grand jury subpoena and relinquish the letter in question.

{¶ 9} The concept of client confidentiality, including the attorney's ethical obligations concerning confidentiality, is embodied in DR 4-101. DR 4-101(A) defines the terms "confidence" and "secret" as follows:

" 'Confidence' refers to information protected by the attorney-client privilege under applicable law and 'secret' refers to other information gained in the professional relationship that the client has requested to be held inviolate or the disclosure of which would be embarrassing or would be likely detrimental to the client."

{¶ 10} DR 4-101(B) states, "Except when permitted under DR 4-101(C), a lawyer shall not knowingly * * * [r]eveal a confidence or secret of a client."

{¶ 11} We must first determine whether the letter sought falls within the definition of a client "secret." Unlike "confidence," which is limited to information an attorney obtains directly from his or her client, the term "secret" is defined in

broad terms. Therefore, a client secret includes information obtained from third-party sources, including "information obtained by a lawyer from witnesses, by personal investigation, or by an investigation of an agent of the lawyer, disclosure of which would be embarrassing or harmful to the client." Guttenberg & Snyder, The Law of Professional Responsibility in Ohio (1992), Section 9.2, at 228; Hazard, Under Shelter of Confidentiality (1999), 50 Case W.Res.L.Rev. 1, 3.

{¶ 12} The court of appeals found that the letter was not a secret because it was not *information* gained in the professional relationship. Instead, the court said that the letter was simply physical evidence, which needed to be disclosed to the authorities. Even though the letter does constitute physical evidence of a possible crime, it also contains information detrimental to appellant. Thus, we find that the letter falls within the definition of a client "secret," since it was obtained in the professional attorney-client relationship, by appellant's agent (the investigator), and since it contains detrimental information detailing a possible crime committed by appellant's former client.

{¶ 13} Although the letter is a client secret, this does not necessarily mean that disclosure of the letter is absolutely prohibited. An attorney may disclose a client secret if one of the four listed exceptions in DR 4-101(C) applies.

{¶ 14} Appellant concedes that DR 4-101(C)(3) permits him to "reveal * * * [t]he intention of his client to commit a crime and the information necessary to prevent the crime."[1] Nevertheless, appellant contends that this provision is narrow in its scope and permits him to orally disclose the information contained in the letter, but does not permit him to disclose the physical evidence (the letter). Therefore, appellant maintains that DR 4-101(C)(3) did not permit him to reveal

---

1. Appellant points out that this provision is written in permissive terms, since it states that a lawyer "may" reveal the client's intent to commit a crime. We acknowledge that DR 4-101(C)(3) is permissive. Nevertheless, this has no bearing on the outcome in this case, since appellant concedes that he already disclosed the relevant information to the authorities.

more than he did when he orally disclosed the intention of his former client to commit a crime and prevented a crime from occurring.

{¶ 15} We agree with appellant that he was authorized by DR 4-101(C)(3) when he chose to reveal the intent of his client to commit a crime, and, actually, went beyond what DR 4-101(C)(3) allows by reading the entire letter to the trial court and police. However, the fact that he revealed this information does not answer the question whether he is obligated to produce the letter itself. Thus, the question that remains is whether appellant is required to relinquish the letter itself and present it to the grand jury. We find that the exception found in DR 4-102(C)(2) governs disposition of this issue.

{¶ 16} DR 4-101(C)(2) provides that an attorney may reveal "[c]onfidences or secrets when permitted under Disciplinary Rules or required by law or court order." Although the language contained in DR 4-101(C)(2), like that of DR 4-101(C)(3), is written in permissive terms, courts have interpreted provisions similar to DR 4-101(C)(2) in such a manner as to require disclosure. The exception of DR 4-101(C)(2) for disclosures required by law has been construed so that "the effect of other rules * * * compel[s] disclosures." Hodes, The Code of Professional Responsibility, The Kutak Rules, and the Trial Lawyer's Code: Surprisingly, Three Peas in a Pod (1981), 35 U. Miami L.Rev. 739, 791. Consequently, if a lawyer is "required by law" to disclose information to the authorities, "these legal obligations create 'forced' exceptions to confidentiality." 1 Hazard & Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct (2 Ed.1990) 183, Section 1.6:310. Under these circumstances, a lawyer's duty "not to use or disclose confidential client information * * * is superseded when the law specifically requires such use or disclosure." Restatement of the Law 3d, Law Governing Lawyers (Proposed Final Draft No. 1, 1996), Section 115, Comment *a*.

{¶ 17} The exception of DR 4-101(C)(2) for disclosures required by law has been applied in the context of mandating that attorneys relinquish evidence and

instrumentalities of crime to law-enforcement agencies. Thus, the rule has emerged that, despite any confidentiality concerns, a criminal defense attorney must produce real evidence obtained from his or her client or from a third-party source, regardless of whether the evidence is mere evidence of a client's crime, see, *e.g.*, *Morrell v. Alaska* (1978), 575 P.2d 1200, or is a fruit or instrumentality of a crime.[2] In either event, the physical evidence must be turned over to the proper authorities. See *In re Ryder* (C.A.4, 1967), 381 F.2d 713 (holding that an attorney abuses his professional responsibility by knowingly taking possession of and secreting the fruits and instrumentalities of a crime); *State v. Green* (La.1986), 493 So.2d 1178 (holding that the attorney had an obligation to relinquish client's gun, an instrumentality of a crime, to authorities). In essence, the confidentiality rules do not give an attorney the right to withhold evidence. See *People v. Lee* (1970), 3 Cal.App.3d 514, 526, 83 Cal.Rptr. 715, 722.

**{¶ 18}** Appellant contends, however, that there are strong policy reasons against mandating disclosure. Appellant believes that mandatory disclosure will discourage attorneys from reporting possible threats made by their clients and will therefore run contrary to the intent of the code, which is to prevent crimes from occurring. Appellant cites the Massachusetts decision of *Purcell v. Dist. Atty. for Suffolk Dist.* (1997), 424 Mass. 109, 676 N.E.2d 436, which highlights these concerns.

**{¶ 19}** In *Purcell*, an attorney informed police about his client's intention to commit arson. The trial court ordered the attorney to testify about the conversation he had with his client concerning his client's intention to commit this

---

2. In *Morrell*, the Supreme Court of Alaska held that a criminal defense attorney was obligated to turn over to authorities a legal pad containing a kidnapping plan written by his client that was given to him by his client's friend. Although the main issue before the court in *Morrell* was whether the defendant was denied effective assistance of counsel, the decision is applicable to this case, since the court also addressed the interplay between the relevant disciplinary rules, including the rules regarding clients' secrets. See *id.* at 1211, fn. 19.

crime, and the state defended the order on the basis of the crime-fraud exception to the attorney-client privilege. The Massachusetts Supreme Court vacated the trial court's order and held that the attorney did not have to testify against his client. In so holding, the court noted:

"We must be cautious in permitting the use of client communications that a lawyer has revealed only because of a threat to others. Lawyers will be reluctant to come forward if they know that the information that they disclose may lead to adverse consequences to their clients. A practice of the use of such disclosures might prompt a lawyer to warn a client in advance that the disclosure of certain information may not be held in confidence, thereby chilling free discourse between lawyer and client and reducing the prospect that the lawyer will learn of a serious threat to the well-being of others."

{¶ 20} Although these may be valid concerns, we find that the *Purcell* decision is distinguishable from the instant case, and that the policy reasons cited in *Purcell* have less validity here. *Purcell* involved direct communications between an attorney and client. The issue in that case was whether the attorney was required to testify against his client. In this case, the attorney-client privilege is not at issue. Nor is appellant being asked to testify against his former client. Instead, the instant case revolves around whether a physical piece of evidence must be relinquished to the grand jury. While we recognize the importance of maintaining a client's confidences and secrets and understand that an attorney may have concerns in turning over incriminating evidence against his or her client, we do not believe that these concerns should override the public interest in maintaining public safety and promoting the administration of justice by prosecuting individuals for their alleged criminal activity.

{¶ 21} Since the letter sought in this case contains evidence of a possible crime, we find that the letter must be turned over to the grand jury. Accordingly, we hold that where an attorney receives physical evidence from a third party

relating to a possible crime committed by his or her client, the attorney is obligated to relinquish that evidence to law-enforcement authorities and must comply with a subpoena issued to that effect.

{¶ 22} Other provisions of the code support our holding that appellant must relinquish the letter to the grand jury. DR 7-109(A) provides, "A lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal or produce." Furthermore, DR 7-102(A)(3) provides, "In his representation of a client, a lawyer shall not * * * [c]onceal or knowingly fail to disclose that which he is required by law to reveal." Reading these rules together, we believe that under the facts presented in this case, appellant has a legal obligation to turn the letter over to the grand jury.[3]

{¶ 23} We agree with the court of appeals that the sanction imposed against appellant stemming from the contempt proceedings should be vacated, given that appellant challenged the subpoena on confidentiality grounds in good faith. See *Seventh Elect Church in Israel v. Rogers* (1984), 102 Wash.2d 527, 688 P.2d 506. Under these circumstances, we do not believe appellant should be punished and held in contempt. The finding of contempt is vacated on condition that appellant comply with the subpoena.

{¶ 24} Accordingly, we affirm the judgment of the court of appeals and order appellant to relinquish the letter in question to the grand jury.

*Judgment affirmed.*

MOYER, C.J., and LUNDBERG STRATTON, J., concur.

COOK, J., concurs in judgment.

DOUGLAS, KENNEDY and PFEIFER, JJ., concur in part and dissent in part.

JOHN P. KENNEDY, J., of the Tenth Appellate District, sitting for RESNICK, J.

_____

3. Although appellant has not concealed any evidence, we also note that a person may be charged with obstruction of justice under R.C. 2921.32, for concealment of physical evidence of a crime.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 25} I agree with the majority that the letter is a client secret and that Helmick was authorized to reveal the intent of his client to commit a crime. DR 4-101(C)(3). Revealing "the information necessary to prevent the crime," DR 4-101(C)(3), should have concluded the matter. Unfortunately, the trial court and now a majority of this court chose to read DR 4-101(C)(2) liberally. That reading of the exception swallows the rule of DR 4-101(B)(1), which states that a lawyer "shall not knowingly * * * [r]eveal a confidence or secret of his client," and declares open season on defense attorney files.

{¶ 26} The majority relies on cases from other jurisdictions in which attorneys were required to turn over to the proper authorities the fruits and instrumentalities, including a gun, of crime. *E.g., In re Ryder* (C.A.4, 1967), 381 F.2d 713; *State v. Gree*n (La.1986), 493 So.2d 1178. Those cases are not similar factually to this case. *Purcell v. Dist. Atty. for Suffolk Dist.* (1997), 424 Mass. 109, 676 N.E.2d 436, is, and we should have taken a similarly cautious approach. Otherwise, "[l]awyers will be reluctant to come forward if they know that the information that they disclose may lead to adverse consequences to their clients * * *, thereby chilling free discourse between lawyer and client and reducing the prospect that the lawyer will learn of a serious threat to the well-being of others." *Id.* at 114, 676 N.E.2d at 440.

{¶ 27} Helmick acted the way all attorneys with an ethical dilemma should: he sought out competent counsel and followed the advice given. He acted in a manner designed to prevent the commission of a crime, which is what the (C)(3) exception to DR 4-101 is all about.

{¶ 28} Today's opinion will likely have two unfortunate results. First, overzealous prosecutors will be more likely to engage in fishing expeditions. Second, attorneys and their clients will be less likely to discuss potential crimes,

which will decrease the likelihood that the crimes can be prevented.  I concur in part and dissent in part.

DOUGLAS and KENNEDY, JJ., concur in the foregoing opinion.

_____