[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 160.]

ALLEN COUNTY BAR ASSOCIATION *v.* WILLIAMS.

[Cite as *Allen Cty. Bar Assn. v. Williams*, 2002-Ohio-2006.]

*Attorneys at law—Monitoring attorney may not interfere with attorney-client privilege between respondent and his clients by reviewing privileged materials without the client's specific waiver of the privilege—Monitoring attorney's oversight limited to unprivileged matters.*

(No. 2000-2251—Submitted January 9, 2002—Decided May 8, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 99-71.

ON MOTION FOR CLARIFICATION.

_____

**Per Curiam**.

{¶1} On June 13, 2001, we imposed a disciplinary sanction on respondent, Jeffrey G. Williams of Lima, Ohio, Attorney Registration No. 0010085. *Allen Cty. Bar Assn. v. William*s (2001), 92 Ohio St.3d 104, 748 N.E.2d 1101. In that order we said:

{¶2} "During his probation [respondent] shall also cooperate fully with a monitoring attorney appointed by relator to ensure that he uses adequate procedures to communicate with his clients and keeps them well informed about their cases." Id. at 106, 748 N.E.2d 1101.

{¶3} The monitoring attorney appointed by relator, Allen County Bar Association under Gov.Bar R. V(9)(A)(3), instructed respondent to obtain releases of the attorney-client privilege from his clients so that the monitoring attorney could "[m]onitor compliance by the respondent with the conditions of probation imposed by the Supreme Court." Gov.Bar R. V(9)(B)(1). Respondent could not obtain these releases from his clients.

**{¶4}** The relator has now filed a motion requesting that the Supreme Court clarify the extent to which the files and records of the clients of the respondent may be reviewed, notwithstanding the failure or refusal of the clients to grant releases of the attorney-client privilege. Specifically, relator asks this court to rule that respondent's clients' files and records are available to the monitoring attorney so that he may fulfill his duties under Gov.Bar R. V(9)(B)(1), subject to a condition of nondisclosure to third parties.

**{¶5}** We hereby rule that the monitoring attorney may not interfere with the attorney-client privilege between the respondent and his clients by reviewing privileged materials without the client's specific waiver of the privilege.

**{¶6}** This is a matter of first impression in Ohio. Those few courts in other states that have addressed the issue require a monitor in a disciplinary matter to respect the attorney-client privilege. See, e.g., *In re Solomon* (Del.1999), 745 A.2d 874, 890. When in a disciplinary case the Supreme Courts of California and Louisiana have imposed monitored probation in lieu of suspension, they have included the following standard language, or some nearly identical version, in their orders:

**{¶7}** "Except to the extent prohibited by the attorney-client privilege or the privilege against self-incrimination, [respondent] shall answer fully, promptly, and truthfully to * * * any probation monitor * * * assigned under these conditions of probation. * * *" See *In re Leardo* (1991), 53 Cal.3d 1, 20, 278 Cal.Rptr. 689, 805 P.2d 948; *Howard v. State Bar* (1990), 51 Cal.3d 215, 225, 270 Cal.Rptr. 856, 793 P.2d 62; *Sternlieb v. State Bar* (1990), 52 Cal.3d 317, 335, 276 Cal.Rptr. 346, 801 P.2d 1097; *In re Spring* (La.2001), 801 So.2d 327, 329.

**{¶8}** A practice that restricts the disciplinary monitor to matters outside the attorney-client privilege and client confidences unless the monitor has received a clear waiver of the privilege from the disciplined attorney's clients conforms with the language of EC 4-2 of the Code of Professional Responsibility, which states,

"[I]n the absence of consent of his client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter; nor should he in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or his confidences or secrets would be revealed to such lawyer."

{¶9} Ohio's codification of the attorney-client privilege appears in R.C. 2317.02(A), which provides, "An attorney [shall not testify] concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client." The privilege belongs not to the attorney but to the client. *Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency, Inc*. (1992), 82 Ohio App.3d 322, 329, 612 N.E.2d 442. This court has held that R.C. 2317.02(A) "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985, syllabus.

{¶10} Nevertheless, there are situations where a lawyer may disclose privileged information without the client's waiver. DR 4-101(C) states:

{¶11} "A lawyer may reveal:

{¶12} "* * *

{¶13} "(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order."

{¶14} This has been called the "required by law" exception to client confidentiality. 1 Hazard & Hodes, The Law of Lawyering (2001), Section 9.25. As stated in 1 Restatement of the Law 3d, The Law Governing Lawyers (2000) 484, Section 63, Comment *a*, "A lawyer's general legal duty * * * not to use or disclose confidential client information * * * is superseded when the law specifically requires such use or disclosure." As we noted in *In re Original Grand Jury Investigation* (2000), 89 Ohio St.3d 544, 548, 733 N.E.2d 1135, "[T]he

exception of DR 4-101(C)(2) for disclosures required by law has been applied in the context of mandating that attorneys relinquish evidence and instrumentalities of crime to law-enforcement agencies." However, "[t]ypically, the information that a court will order a lawyer to disclose is the identity or whereabouts of a client, or the client's fee arrangement." ABA/BNA Lawyers' Manual on Professional Conduct (1994), Section 55:1201. And the exception will be applied when a lawyer is ordered by a judge to testify about a former client. 1 Hazard & Hodes, supra, Section 9.25. However, there is no authority that DR 4-101(C)(2) covers the functions of a monitor who is attempting to help an attorney on probation from harming his clients. Nor is there any reason to believe that the public policy of preventing or uncovering crime would be furthered by such an application of DR 4-101(C)(2).

{¶15} We do not believe that the monitoring attorney may be considered a "partner" of the disciplined attorney and in that role have access to confidential or privileged information. EC 4-2 reads: "[A] lawyer may disclose the affairs of his client to partners or associates of his firm." The monitoring attorney is also bound by the attorney-client privilege and the duty to avoid conflicts in his own practice. A problem might arise were the monitoring attorney to find in the disciplined attorney's files information affecting a client of his own. Or he might discover some confidential financial information regarding, for example, real estate values. Also, if the monitoring attorney offers an opinion or advice to the disciplined attorney to help the disciplined attorney "keep his clients well informed about their cases," the monitoring attorney might open himself to malpractice actions by the disciplined attorney's clients. Moreover, the respondent's existing clients will not have anticipated that their affairs would be revealed to attorneys in other law offices.

{¶16} We therefore conclude that the monitoring attorney's oversight in this case is limited to nonprivileged matters. He may ensure that respondent uses

adequate procedures to communicate with his clients. The monitor will not be authorized to examine respondent's privileged client correspondence, or the matters discussed in client meetings and other communications, but only the consistency and promptness with which the respondent attends to client matters.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and COOK, JJ., concur.

F.E. SWEENEY and LUNDBERG STRATTON, JJ., dissent.

——————————

**LUNDBERG STRATTON, J., dissenting.**

{¶17} I respectfully dissent from the majority's decision because I believe that pursuant to Gov.Bar R. V(9)(A) and (B), the monitoring attorney should be permitted full access to client files, with the condition that the monitoring attorney abide by the same client confidence rules maintained by partners and associates within the respondent's law firm.

{¶18} Our authority to regulate the practice of law, which flows from Section 2(B)(1)(g), Article IV of the Ohio Constitution, grants us the power to define the role of the monitoring attorney in supervising and monitoring an attorney who is on probation. Pursuant to that power, I would hold that a monitoring attorney is permitted to have full access to the client files of the disciplined attorney without obtaining the consent of each client.

{¶19} The majority cites the following language from EC 4-2 of the Code of Professional Responsibility as authority for restricting access to nonprivileged matters: "[I]n the absence of consent of his client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter; nor should he, in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or his confidences or secrets would be revealed to such lawyer." However, EC 4-2 also states that "[u]nless the client otherwise directs, a lawyer may disclose the affairs of his client to partners or

associates of his firm." I would hold that a monitoring attorney is comparable to a partner or associate in a law firm and that the monitoring attorney is bound by the same duty of nondisclosure of client confidences and secrets. The majority suggests that the monitoring attorney may somehow discover information in the disciplined attorney's client files that may affect his own clients. This implies that monitoring attorneys do not have the ability, indeed, the ethical responsibility, as servants of the court, to remain objective and preserve the confidences of the disciplined attorney's clients in the name of the disciplinary process.

{¶20} Moreover, I would find that DR 4-101(C)(2) provides authority for the monitoring attorney to access the files of the disciplined attorney without the client's waiver. DR 4-101(C)(2) provides that a lawyer may reveal "[c]onfidences or secrets when permitted under Disciplinary Rules or required by law or court order." The majority finds that there is no supporting authority for the proposition that DR 4-101(C)(2) covers the functions of a monitor who is attempting to prevent an attorney on probation from harming his clients. I disagree and note that nor is there authority for the proposition that DR 4-101(C)(2) does *not* cover this situation, and I find no reason why it should not. Thus, I would find that our court order setting probation terms for the disciplined attorney falls within DR 4-101(C)(2) and permits the disciplined attorney to allow the monitoring attorney to access client files containing privileged material.

{¶21} The majority's decision to prohibit monitoring attorneys from accessing the client files of a disciplined attorney strikes at the very heart of the role of the monitoring attorney in the disciplinary process. Prohibiting access to files relegates the monitoring attorney to a role of merely monitoring deadlines and other superficial procedural issues. If the essence of the monitoring attorney's role is to truly monitor compliance by the respondent with the conditions of probation imposed by this court, as per Gov.Bar R. V(9)(B)(1), the majority's decision to

prohibit access to client files lessens the ability of the monitoring attorney to supervise the quality of the respondent's practice of law.

{¶22} As a self-regulating profession, we must do all that we can to ensure that disciplined attorneys are complying with the conditions of their probation. For these reasons, I respectfully dissent and would not limit the monitoring attorney's oversight in this case to nonprivileged matters, but would permit full access to client files, with the condition that the monitoring attorney abide by the same client confidence rules maintained by partners and associates within the respondent's law firm.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____

Bruce Comly French, for relator.

_____