Filed 4/1/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| ANGELA BRITTON et al., | B249232 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC492978) |
| v. | |
| THOMAS V. GIRARDI et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge. Affirmed.

The Dion-Kindem Law Firm and Peter R. Dion-Kindem for Plaintiffs and Appellants.

The Erhlich Law Firm and Jeffrey Isaac Erhlich for Defendants and Respondents William M. Shernoff, Michael J. Bidart, and Shernoff Bidart Echeverria Bentley.

Girardi | Keese, Thomas V. Girardi and Graham B. Lippsmith for Defendants and Respondents Thomas V. Girardi and Girardi | Keese.

Engstrom, Lipscomb & Lack, Robert J. Wolfe and Robert T. Bryson for Defendants and Respondents Jerry A. Ramsey, Walter J. Lack, and Engstrom, Lipscomb & Lack.

_____

Plaintiffs Angela Britton and others appeal judgment after the trial court sustained the demurrer of defendants to plaintiffs' second amended complaint (SAC) for damages based upon defendants' alleged failure to obtain their informed consent to an aggregate settlement, and defendants' misappropriation of and failure to account for the settlement funds. Plaintiffs were represented by defendant law firms and attorneys in connection with an action against State Farm Insurance Company arising out of the 1994 Northridge earthquake (State Farm litigation). Court-appointed retired judges presided over a 1997 aggregate settlement of the matter on behalf of the plaintiffs. However, in 2012, one of the parties to the State Farm settlement conducted a random sampling of other plaintiffs' awards in the action, which sampling they contend revealed that the defendant law firms allegedly had not properly disbursed or accounted for the settlement funds and had concealed this conduct from plaintiffs. The trial court sustained defendants' demurrers on the grounds that plaintiffs' claims were based on speculation and barred by the statute of limitations of sections 340.6 and 338, subdivision (d).[1]

On appeal, relying on our opinion in *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105 (*Prakashpalan*), a related matter also arising out of the Northridge earthquake, plaintiffs assert the statute of limitations had not run under Probate Code section 16460 because they had no notice of any wrongdoing. Further, they argue defendants' violations of Business and Professions Code section 6091 in failing to provide an accounting are not barred under that statute because their action was filed within one year of defendants' failure to comply with the statute.

In *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, we held that absent any other notice, the statute of limitations pursuant to Probate Code section 16460 was tolled as to a client's fraud claim arising out of funds held in an attorney's trust account until the client received an accounting. Nothing in *Prakashpalan* altered the time-worn principle that where there are facts sufficient to put one on inquiry notice, the fraud statute of

---

[1] All statutory references herein are to the Code of Civil Procedure unless otherwise indicated.

limitations starts running even when the defendant is a fiduciary.  In the instant case, unlike in *Prakashpalan,* plaintiffs' allegations in their complaint in combination with the exhibits attached to their complaint reveal facts that should have put plaintiffs on inquiry notice of their fraud claim against the defendant attorneys, thus starting the running of the fraud statute of limitations.  Because plaintiffs filed their complaint after expiration of the fraud statute of limitations, the trial court properly sustained defendants' demurrers and we affirm.

## BACKGROUND

1.      *Prakashpalan v. Engstrom, Lipscomb & Lack*

In *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, we held that the provisions of Probate Code section 16460 applied to claims for fraud where the attorney-fiduciary had failed to provide an accounting of an aggregate settlement.  In *Prakashpalan*, the Prakashpalans alleged that the defendant law firm settled a lawsuit for 93 insureds of State Farm for claims arising out of the Northridge earthquake in November 1997, but that the plaintiffs did not learn until February 2012 that the defendant had failed to fully and properly distribute $22 million of the settlement funds.  The Prakashpalans alleged that they first suspected fraud when they had randomly contacted 17 of the plaintiffs in the litigation, and conducted a mathematical analysis of the settlement and of the overall litigation.  Based on those discussions, plaintiffs alleged a significant portion of the settlement funds had been withheld.  The Prakashpalans did not allege that the settlement was presided over by retired judges, that they had signed a settlement agreement, or that their informed consent to the settlement was not obtained.  (*Id*. at pp. 1114–1115.)

The Prakashpalans sued the Engstrom firm and two of its attorneys on numerous theories.[2]  In *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, we held that their fraud-based

---

[2] The second amended complaint alleged claims for (1) professional negligence/legal malpractice/conflict of interest; (2) breach of fiduciary duty; (3) fraudulent concealment of conflict of interest; (4) fraudulent concealment of embezzlement; (5) intentional fraud; (6) constructive fraud; (7) unjust enrichment; (8) two claims of unfair

claims (those claims not covered by section 340.6) were timely under Probate Code section 16460, which governs fiduciaries, and that until the Prakashpalans received an accounting that put them on notice that monies may have been wrongfully withheld, their claims did not accrue. As a result, the complaint filed in February 2012 was timely although the action had originally been settled in 1997 because the Prakashpalans alleged that they had not received any accounting. On that basis, we also found their claims were not barred as speculative because without the accounting, the Prakashpalans had no way of ascertaining whether funds had been improperly accounted for or withheld. (*Id.* at pp. 1124–1127.)

2.      *The Britton Action*

Plaintiffs commenced this action on September 28, 2012 against the firms and attorneys involved in the settlement of the Northridge earthquake action: Shernoff Bidart Echeverria Bentley and attorneys William M. Shernoff and Michael J. Bidart (collectively Shernoff); Girardi | Keese and attorney Thomas V. Girardi (collectively Girardi) and Engstrom, Lipscomb & Lack and attorneys Jerry A. Ramsey and Walter J. Lack (collectively Engstrom). Plaintiffs alleged that each of the defendants and their law firms represented plaintiffs in connection with an action filed against State Farm Insurance Company arising out of the 1994 Northridge earthquake. In 1997, defendants settled the State Farm litigation on behalf of plaintiffs for a sum that plaintiffs allege was in excess of $100 million. Plaintiffs' SAC alleged a claim for "breach of fiduciary duty" based upon defendants' alleged concealment of their failure to account, failure to obtain plaintiffs' informed consent to the settlement, and concealment of their misappropriation of settlement funds. Plaintiffs sought damages and equitable relief, including restitution and an accounting.

In addition, plaintiffs allege that in violation of rule 3-310(D) of the Rules of Professional Conduct, defendants failed to obtain their informed consent to the

business practices ; (9) conversion; (10) civil conspiracy to commit intentional fraud; (11) civil conspiracy to commit conversion; and (12) accounting.

4

settlement. Plaintiffs alleged that "some of the Defendants have claimed that the amounts allocated to the various plaintiffs participating in the settlement of the State Farm litigation were determined by a retired judge who had been appointed as a referee to make such allocations. For this reason, among others, the gross amount of the allocations made to all of the plaintiffs participating in such settlement is not privileged or confidential as to Plaintiffs." Nonetheless, defendants failed to inform plaintiffs how the settlement was calculated, the total amount of the settlement being paid, and how the settlement would be distributed to each plaintiff. Defendants failed to provide a copy of the entire settlement agreement to plaintiffs, and had each plaintiff sign a signature page. Further, defendants concealed from plaintiffs their violation of rule 3-310(D). Plaintiffs alleged that defendants provided them with "net" settlement checks and did not provide a complete and accurate accounting of all funds received and disbursements made from the settlement proceedings, a violation of Business and Professions Code section 6091.

However, as alleged in their SAC, plaintiffs attached to their SAC as exhibit 5 a document purporting to be a page from a November 3, 1997 letter to the Prakashpalans (exhibit 5) stating that Judge Peter Smith[3] had made the allocation determinations, the attorneys could not distribute the settlement until the plaintiffs signed a signature page to be appended to the "Master Settlement Agreement," (an agreement plaintiffs claim they never received), by signing the agreement plaintiffs agreed to the terms of the settlement, after signing the agreement plaintiffs would no longer have any claims against State Farm, and the settlement was confidential and could not be discussed with anyone. Exhibit 5 also stated that "[b]y signing the enclosed signature page, you agree to the terms of the Settlement in your case against State Farm . . . for claims arising from the Northridge earthquake . . . . Your signature also confirms that you accept the award and agree to have the signature page attached to the Master Release."

---

[3] As discussed below, Judge Smith was one of the two retired judges who presided over the settlement allocation pursuant to a reference order.

5

Plaintiffs alleged that defendants deducted their one-third fee and costs from the proceeds. Out of the approximately $67.7 million (two-thirds of $100 million) remaining after defendants deducted their fees and costs, plaintiffs assert that $18.3 million was paid to some of the participating plaintiffs from the settlement proceeds out of the $67.7 million that was available for distribution to plaintiffs. As a result, $48 million of the settlement proceeds have not been accounted for.

The SAC at paragraphs 39 through 47 contain allegations of delayed discovery. Plaintiffs claimed they did not discover defendants' wrongdoing until February 12, 2012, within a year of filing of the action. Two of the plaintiffs, Ron Prakashpalan and Nava Prakashpalan, on February 14, 2012, sent a letter to 12 randomly selected plaintiffs in the State Farm litigation. On February 18, 2012, the Prakashpalans sent another letter to 12 different random plaintiffs, and on February 23, 2012, sent another letter to 12 randomly selected State Farm litigation plaintiffs. The February 18, 2012 letter stated that "we were offered around $70,000 for each family as a settlement amount. . . . For those who did not like the $70,000 [they] received [an] additional $70,000 or [an] additional $140,000." Based upon these figures, the 93 plaintiff families received $19.5 million, and over $80 million was unaccounted for.

Plaintiffs further alleged that none of the State Farm litigation plaintiffs who contacted the Prakashpalans actually suspected any wrongdoing by the attorney defendants; the individual defendants were concerned that they could get into trouble if they discussed the settlement. On March 31, 2012, the Prakashpalans and Bob Premble, one of the State Farm litigation plaintiffs, organized a meeting during which Premble made a presentation explaining how the Engstrom defendants had committed wrongful acts and that a simple mathematical analysis based upon 18 percent of the plaintiffs demonstrated that there was over $22 million of settlement funds not accounted for. Meetings were held in May and August 2012 with other State Farm litigation plaintiffs.

6

On September 17, 2012, plaintiffs' counsel sent a letter to defendants requesting a complete accounting of the settlement proceeds pursuant to Business and Professions Code section 6091, but defendants failed to respond to this request.

Plaintiffs alleged that defendants were untruthful when defendants told the plaintiffs (including the plaintiffs herein) that the plaintiffs had received their proper share of the settlement proceeds. Plaintiffs herein did not know defendants had violated their duties under Rules of Professional Conduct, rule 3-310(D) or their duty to account to plaintiffs because they had no reason to distrust defendants. The information regarding the calculation and disposition of the settlement proceeds was entirely within defendants' knowledge, and defendants did not provide plaintiffs with any records or information and expressly told plaintiffs they were not to discuss the settlement with anyone. The Engstrom defendants and the Shernoff defendants have destroyed their files relating to this matter, but did so without obtaining plaintiffs' consent before doing so.

### 3. Demurrers to the SAC

The Engstrom defendants demurred.[4] They argued the claims based on the settlement were time barred because plaintiffs failed to allege sufficient facts to support the delayed discovery of their alleged fraud claims: they had not alleged with particularity the representations alleged to be fraudulent, to whom the representations were made, or by whom they were made. Further, defendants argued plaintiffs did not allege why they did not discover the misrepresentations and concealment earlier with the exercise of due diligence; plaintiffs' claims were purely speculative; defendants owed no duty to provide an accounting because the Rules of Professional Conduct did not place a

---

[4] The Engstrom defendants were joined by the Shernoff defendants, who separately argued that plaintiffs failed to allege why they were prevented from discovering the alleged fraud before the limitations period expired, and that plaintiffs' misappropriation claims were based upon groundless speculation. The Engstrom defendants were also joined by the Girardi defendants, who separately argued the statute of limitations was not tolled because plaintiffs had constructive notice of the purported injury more than 15 years before filing their action and plaintiffs' claims were based upon speculation and they had failed to plead fraud with particularity.

limitations period on the retaining of time records; and defendants could not mount an adequate defense without revealing confidential or privileged information under *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451.

Further, Shernoff's judicially noticed materials showed that the plaintiffs had requested the trial court to appoint special masters/referees to preside over the settlement. The trial court entered an order providing for two retired superior court judges, Peter Smith and Arthur Baldonado, to act as special masters. The judges were engaged to allocate the settlement proceeds among the various plaintiffs pursuant to the retainer agreement entered into by the parties. Retired Judge Smith made the allocations, while Retired Judge Baldonado heard appeals from the allocations.[5] These facts relating to the settlement of the matter by retired judges in a special reference proceeding were not alleged in the *Prakashpalan* matter. In an order issued and filed by Los Angeles Superior Court Judge Harvey Schneider, the special referees were appointed on October 14, 1998 and some three months after the special referees were appointed, plaintiffs voluntarily dismissed the matter on January 28, 1998.

In opposition, plaintiffs argued that section 340.6 did not bar their claims because they did not discover their claim due to defendants' concealment and the statute was tolled until the fiduciary makes a proper accounting of client funds.

The trial court found the action was governed by section 340.6 as an action for breach of fiduciary duty, and that under *65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal.App.4th 1047, the plaintiffs' ignorance that the defendants' conduct constituted a violation of their fiduciary duty did not toll the statute of limitations because plaintiffs

---

[5] Defendants jointly have requested that we take judicial notice of those documents that Shernoff requested be judicially noticed in the trial court. Those documents are: (1) order granting plaintiffs' ex parte application for appointment of special masters/referees pursuant to sections 638 and 639, filed October 14, 1997 in the Northridge earthquake litigation; (2) the second amended complaint filed in *Prakashpalan* on April 30, 2012; and (3) the order of dismissal with prejudice filed September 4, 2012 of the Prakashpalan's second amended complaint. We take judicial notice of these materials pursuant to Evidence Code sections 452, subd. (d)(1) and 459.

8

had all the facts to know that their consent had not been obtained when they were presented with their signature pages and checks, and had not received an accounting of the settlement funds, and accordingly, the statute ran when they received their settlement checks. The court noted that Business and Professional Code section 6091 gave them the right to demand an accounting at the time the settlement checks were received, citing *People ex rel. v. Harris v. Sunset Car Wash, LLC* (2012) 205 Cal.App.4th 1433. Further, the court found Rules of Professional Conduct, rule 4-100(C) did not impose an obligation on the attorney to keep records for more than five years. Finally, plaintiffs could have asked at the time of the settlement distribution for an accounting of the fees and costs defendants deducted from the gross settlement amount. Thus, claims based upon the underpayment of settlement shares and excessive fees and costs required plaintiffs to exercise reasonable diligence and make a reasonable inquiry upon receiving their settlement checks. In the case of fraud, where a fiduciary duty exists, nondisclosure is treated as fraud and a delayed discovery rule is more liberally applied, but such rule is nonetheless subjected to a reasonable diligence standard. Even applying the three-year statute applicable to fraud claims (§ 338, subd. (d)), the statue would have begun to run no later than the date when the plaintiffs received their settlement checks.

## DISCUSSION

Plaintiffs contend that the statute of limitations is not a bar to their action because under Probate Code section 16460, defendants never provided a written accounting of the settlement proceeds, which would have triggered the running of the statute, and thus the statute did not begin to run until they discovered defendants' wrongful conduct after the Prakashpalans conducted their mathematical analysis in 2012 and communicated that analysis to the State Farm litigation plaintiffs. Further, they argue that the statute did not run on their claim for defendants' violation of Business and Professions Code section 6091 because defendants did not provide an accounting of their trust fund within the one-year period after plaintiffs' request therefor in September 17, 2012.

9

Respondents respond that plaintiffs' claims are based upon mathematical conjecture and surmise. Further, under section 340.6, consistent with *Prakashpalan*, their claims are barred by the one-year and four-year limitation periods applicable to claims for breach of fiduciary duty and plaintiffs have not alleged facts sufficient to toll the statute. Further, even if plaintiffs had adequately pleaded fraud-based claims within the scope of the holding of *Prakashpalan* (namely, the statute of limitations of Probate Code section 16460 did not begin to run until plaintiffs had an accounting of the settlement proceeds), they are barred by the limitations period of Probate Code section 16460 because plaintiffs were on inquiry notice more than one year before the filing of their action when plaintiffs allege that they cashed their settlement checks without receiving a copy of the agreement, without receiving prior informed consent, and without compliance with Rules of Professional Conduct, rule 3-310(D). Finally, plaintiffs' claims under Business and Professions Code section 6091 are barred because defendants had no obligation under that rule to maintain client records for more than five years.

## I.      Standard of Review

On appeal from an order dismissing an action after the sustaining of a demurrer without leave to amend, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415.) "We may also consider matters that have been judicially noticed." (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading """"with a view to attaining substantial justice [between]

10

the parties.""" (*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1401; § 452.)

## II.    Statute of Limitations

Relying on *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, plaintiffs argue that the statute of limitations in Probate Code section 16460 applies, and that the statute did not begin running until plaintiffs had knowledge of defendants' wrongful conduct.  They argue plaintiffs could not reasonably have discovered defendants' wrongful conduct because there were no facts to put plaintiffs on notice of defendants' concealment of their misappropriation of the settlement funds until the Prakashpalan's did their mathematical analysis in 2012.  We disagree.  In *Prakashpalan*, our opinion was based upon the lack of an accounting because no other facts were pleaded which would have established the plaintiffs there were on inquiry notice.  Here, however, numerous facts were pleaded establishing inquiry notice and hence the triggering of the statute of limitations.

### A.    *The Statute of Limitations Began to Run at the Time of Settlement Because Plaintiffs Have Pleaded Facts Showing They Were on Inquiry Notice of Any Alleged Misfeasance*

#### 1.    Applicable Statutes of Limitations

In *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, we discussed the basic principles of statutes of limitations regarding actions brought against attorneys.  "'An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.'" (§ 340.6, subd. (a).)  Section 340.6 states two distinct and alternative limitation periods:  One year after actual or constructive discovery, or four years after occurrence (the date of the wrongful act or omission), whichever occurs first.  The statute applies to an action for malpractice as well as breach

11

of fiduciary duty arising out of the performance of an attorney's professional duties. (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 223.)

The statute is tolled only during the time the plaintiff has not sustained actual injury. (§ 340.6, subd. (a)(1).) Actual injury occurs where the plaintiff suffers any loss or injury legally cognizable as damages based on the asserted errors or omissions of an attorney. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 743.) The fact of injury or damage need not be recognized or noticed by the plaintiff. Nor does the fact that damage may be difficult to calculate or prove prevent the legal malpractice statute of limitations from running. (*Croucier v. Chavos* (2012) 207 Cal.App.4th 1138, 1148.) "Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227.)

Further, "[b]y its own terms, section 340.6 does not govern claims for fraud. Generally, courts have applied section 338, subdivision (d) to actions for fraud against attorneys. This statute of limitations for fraud is three years. (§ 338, subd. (d).) [Section 338] also codifies the delayed discovery rule, providing that a cause of action for fraud "'is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 35; see § 338, subd. (d).) The date a complaining party learns, or at least is put on notice, that a representation was false is the date the statute starts running. (§ 338, subd. (d).)" (*Prakashpalan*, *supra*, 223 Cal.App.4th at p. 1123, fn. omitted.)

"With respect to trust accounts, Probate Code section 16460 applies to a fiduciary's duty to provide an accounting to a beneficiary and provides a three-year limitations period that is triggered by the trustee's accounting duty. A beneficiary of a trust who receives an accounting that would put him or her on notice of a claim against the trustee has three years from the date of receipt of the accounting to file an action; if no accounting is provided, any action must be filed within three years of the discovery of the claim. Under [this section], the duty of inquiry is triggered where there is sufficient

12

information (either through an accounting *or otherwise*) to put the beneficiary on notice to take action. (Prob. Code, § 16460, subd. (a); *Nogle v. Bank of America* (1999) 70 Cal.App.4th 853, 861, fn. 5 [a duty of inquiry exists even where the alleged wrongdoer is a fiduciary].)" (*Prakashpalan*, *supra*, 223 Cal.App.4th at p. 1123, italics added.)

The statute of limitations of section 338, subdivision (d) provides a limitations period for fraud of three years. (§ 338, subd. (d).) This section effectively codifies the delayed discovery rule in connection with actions for fraud, providing that a cause of action for fraud "'is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" (*Brandon G. v. Gray*, *supra*, 111 Cal.App.4th at p. 35.) The "date a complaining party learns, or at least is put on notice, that a representation was false" is the date the statute starts running. (*Ibid.*)

Where a fiduciary relationship exists, such as that between an attorney and a client, "delaying accrual of the statute [of limitations] 'prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure.'" (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1597.) Thus, the discovery rule is applicable in situations where the plaintiff is unable to see or appreciate a breach has occurred. "Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship." (*Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1424.)

The fraudulent concealment doctrine will also toll the statute of limitations. "[T]he ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." (*Pashley v. Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 231.) 'To take advantage of this doctrine '"the plaintiff must show . . . the substantive elements of fraud . . . and . . . an excuse for late discovery of the facts.'" (*Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 890.)" (*Prakashpalan*, *supra*, 223 Cal.App.4th at p. 1123.)

## 2.      Plaintiffs Have Alleged Facts Putting Them on Inquiry Notice

As we read the SAC, Plaintiffs' claims for "breach of fiduciary duty" are based upon three theories of concealment:[6]  (1) plaintiffs' lack of informed consent to the State Farm litigation settlement because plaintiffs were given only signature pages and the nature of the settlement was concealed from them; (2) defendants' concealment of the salient settlement facts through defendant's failure to render an accounting; and (3) defendants' concealment of their alleged misappropriation of settlement funds.

In *Prakashpalan*, the plaintiffs' operative complaint did not allege numerous crucial facts present here that distinguish *Prakashpalan* and that lead us to conclude that, unlike *Prakashpalan*, the facts demonstrate that plaintiffs here were on inquiry notice because the information given them about the settlement process warned them that they did not have the information needed to give consent about the process and thus alerted them to investigate.

Plaintiffs have alleged here that they had inadequate information to make an informed consent to the aggregate settlement as required by rule 3-310(D) of the Rules of Professional Conduct because defendants concealed information from them under the guise of confidentiality and privilege concerning the total amount of the settlement, how much each plaintiff was getting, how much the attorneys would be paid, and the amount of deducted costs.  Plaintiffs claim this information could not be confidential because the amounts allocated to the various plaintiffs were determined by a retired judge appointed as a referee.  Further, plaintiffs contend the defendant law firms failed to account for and allegedly misappropriated monies from the settlement proceeds (the alleged $100 million

---

[6] We observe that in this case, like *Prakashpalan*, a claim for breach of fiduciary duty would be barred by the statute of limitations of section 340.6. (*Prakashpalan*, *supra*, 223 Cal.App.4th at p. 1122.)  However, because we read plaintiffs' claims as sounding in concealment (fraud), we apply the statutes of limitations of Probate Code section 16460 and section 338, subdivision (d), which both have a three-year period. (*Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606–607 [to determine applicable statute of limitations, court looks to gravamen of complaint].)

14

State Farm payout), either through the taking of an excessive share for themselves as fees and costs, or by failing to distribute all of the settlement proceeds. Thus, plaintiffs allege their "net" settlement proceeds either did not reflect their retainer agreement, or the amount the attorneys represented to them as their gross settlement (prior to deduction of fees and costs) was in fact less than the amount actually awarded to them.

Unlike *Prakashpalan*, the plaintiffs here have alleged facts showing they were on inquiry notice given what they have alleged they did not know at the time they received their settlement checks. With respect to their consent to the settlement, plaintiffs have alleged that at the time of the settlement, they received only a signature page and knew that they did not receive a copy of the master settlement agreement, master release, and confidentiality agreement. Plaintiffs attached to their SAC exhibit 5, a copy of a page from a letter sent to the Prakashpalan regarding the settlement[7] in which plaintiffs were advised that by signing the mere signature page, they were giving up all claims against State Farm, past and future, and that they could not talk about the settlement with anyone. Exhibit 5 also mentioned Judge Smith, who was not the superior court judge assigned to their case, who would be making the settlement allocations. Judge Smith had been named as one of the settlement special masters/referees in the order requested by plaintiffs and filed by Judge Schneider on October 14, 1998.

Unlike *Prakashpalan*, *supra*, 223 Cal.App.4th 1105, where the plaintiffs did not receive an accounting nor did they allege they had signed a settlement agreement and thus "had no other sources of information, were not put on notice of any wrongdoing until they later conducted an investigation by surveying other settling plaintiffs in the [State Farm litigation]," (*id.* at p. 1125) here, plaintiffs allege facts that required them to do more than wait almost 15 years to bring their claims against the defendant attorneys. Plaintiffs have not explained why they gave up all claims against State Farm, yet they knew upon signing

---

[7] We infer that although the page from the letter attached as exhibit 5 was addressed to the Prakashpalans, because plaintiffs attached a page from this letter to the SAC, plaintiffs received a letter that was either identical or substantially similar.

a mere signature page that they did not have the master settlement agreement, the master release, or the confidentiality agreement, and were barred from speaking with each other about the settlement based on a confidentiality agreement they knew they did not have; further, they did not inquire about Judge Smith who was making the settlement allocation, presumably including to the attorneys for fees and costs, which would have been the amounts left after allocations to the plaintiffs.

With respect to the distribution of funds, unlike *Prakashpalan*, the plaintiffs here admitted that the settlement was presided over by retired judges who provided them with an allocation process and a review of that allocation. Judicially noticed materials reflect that the trial court entered an order appointing Judges Baldonado and Smith. Exhibit 5 to the SAC demonstrates that plaintiffs knew Judge Smith had made the allocations; the allocations could not be distributed until plaintiffs signed signature pages of a settlement agreement they knew they did not have; and the settlement was confidential so that they could not discuss it with anyone. If the plaintiffs did not know about Judge Smith's function, or about the allocation process described in the reference order, exhibit 5 put them on notice to inquire who Judge Smith was and to inquire about the nature of the allocation process because they were told at the time of settlement that this allocation process foreclosed them from ever bringing claims against State Farm. Again, unlike *Prakashpalan*, sufficient facts were available to plaintiff to trigger their inquiry duty; the same analysis plaintiffs conducted in 2012 could have been conducted in 1997.

In *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, the Supreme Court rejected an argument that reliance on one's attorney discharged a plaintiff from being on inquiry notice for purposes of the running of a fraud statute of limitations. In that case, the plaintiff wife sued her attorney, among others, alleging that the value of stock owned by the community was misrepresented to her when she entered into a marital property distribution settlement. Her attorneys had made earlier inquiries into the value of the stock when they questioned the stock's valuation, but dropped their investigation. The wife argued that she had no duty to "make inquiry regarding the accuracy of the

16

representations as to the value of the stock because [her attorney] had an obligation as a fiduciary to provide her with full and correct information as to their worth." (*Id*. at pp. 874–875.) The Supreme Court observed that even if this were a correct statement of the law, "if she became aware of facts which would have make a reasonably prudent person suspicious , she had a duty to investigate further, and she was charged with knowledge of matters which would have been revealed by such an investigation." (*Id*. at p. 875.)

The same is true here. Thus, in conclusion, the three-year statutes of limitations of Probate Code section 16460 and Code of Civil Procedure section 338, subdivision (d) began to run at the very latest when all avenues of recourse—the special master proceedings, its internal appeal process, questioning of the process and its allocation—expired, which was more than three years before the commencement of this action. Plaintiffs' complaint filed in 2012 was untimely because the fraud statute of limitations started running at the latest in 1998, when plaintiffs were on inquiry notice (1) to investigate why they were being asked to accept a check about a settlement where they knew they had next to no information and (2) had access to a settlement allocation process in which to object.

### B. *Business and Professions Code Section 6091*

Business and Professions Code section 6091 provides that, "If a client files a complaint with the State Bar alleging that his or her trust fund is being mishandled, the State Bar shall investigate and may require an audit if it determines that circumstances warrant. [¶] At the client's written request, the attorney shall furnish the client with a complete statement of the funds received and disbursed and any charges upon the trust account, within 10 calendar days after receipt of the request. Such requests may not be made more often than once each 30 days unless a client files a complaint with the State Bar and the State Bar determines that more statements are warranted." The attorney must preserve client records for at least five years after "final appropriate distribution of

(client) funds or properties." (Rules of Prof. Conduct, rule 4-100(B)(3); cf. ABA Model Code DR 9–102(B) [no time period specified for maintenance of records].)

In the context of an aggregate settlement, Business and Professions Code section 6091 does not specify to whom the accounting must be given. Plaintiffs argue here that all plaintiffs represented by a particular attorney are entitled to an accounting of all of that attorneys' aggregate settlement clients. Some authority suggests that Business and Professions Code section 6901 does not apply so broadly. (See Rules of Prof. Conduct, rule 4-100(B)(3) [client or client's representative entitled to accounting]; *Sternlieb v. State Bar* (1990) 52 Cal.3d 317, 330 [accounting for entrusted funds must be provided to client and any third party who has an interest in the funds or to whom attorney owes fiduciary duty].) However, we need not decide the issue here, as the plaintiffs admit they signed an agreement knowing that they would not receive that information in connection with the settlement.[8]

## DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


I concur:


BENDIX, J.[*]

---

[8] The applicability of Business and Professions Code section 6091 to the State Farm settlement was not raised in *Prakashpalan*, *supra*, 223 Cal.App.4th 1105.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18

Rothschild, P. J., concurring in the judgment:

I concur in the judgment only. I respectfully disagree with the majority's conclusion that plaintiffs' allegations show that, at the time of the settlement, plaintiffs already had sufficient notice of wrongdoing to trigger a duty to investigate. But I believe that the judgment should be affirmed for largely the same reasons stated in my dissent in *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105.

Defendants were plaintiffs' lawyers, and all of plaintiffs' claims arise from defendants' performance of professional services for plaintiffs. Plaintiffs' claims are consequently subject to the statute of limitations defined by subdivision (a) of Code of Civil Procedure section 340.6, which provides that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." The statute provides in addition that the four-year period is tolled whenever "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney." (Code Civ. Proc., § 340.6, subd. (a)(3).)

Plaintiffs filed suit more than 14 years after the (alleged) wrongful act or omission. Plaintiffs' claims are therefore untimely unless plaintiffs have adequately alleged fraud or willful concealment. Consequently, in order for their claims to be timely, plaintiffs must allege *with particularity* all of the facts constituting the substantive elements of fraud. (See, e.g., *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.)

Plaintiffs have not done so. Plaintiffs purport to allege two fraud theories, but neither of them is adequately pleaded.

First, plaintiffs allege that "[w]hen Defendants made settlement distributions to Plaintiffs, Defendants represented in writing to Plaintiffs that they were distributing the shares of the State Farm Litigation settlement to which they were entitled," and plaintiffs

allege that that representation was false. Those allegations are far too vague to constitute an adequate pleading of fraud. Plaintiffs never allege what defendants told them about (1) the settlement, (2) their shares of the settlement, or (3) how those shares were determined. In the absence of such allegations, it is impossible to determine whether defendants' alleged representations or omissions were materially misleading, or misleading at all. We do not even know exactly what defendants' alleged representations were. (Cf. 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 718, p. 134 ["The representation must be directly and specifically pleaded; without that pleading an essential element of the cause of action is lacking"]; *id.*, § 719, p. 135 ["The typical misrepresentation of fact is usually pleaded verbatim"].)

Second, plaintiffs allege that "Defendants did not obtain Plaintiffs' informed written consent to the aggregate settlement," because defendants allegedly did not disclose certain information about the settlement. But plaintiffs again fail to allege what defendants *did* tell them about the settlement, so they again fail to plead fraud with sufficient particularity. As long as plaintiffs fail to allege with particularity what they did know about the settlement, it is impossible to determine whether the things they did not know were of any significance.

Plaintiffs also argue that their cause of action for violation of Business and Professions Code section 6091 (which requires an attorney to provide an accounting of client trust funds upon the client's written request) is timely under Code of Civil Procedure section 340.6, because the action was filed within one year of plaintiffs' written request for an accounting. I am not persuaded. Plaintiffs concede that they first requested the accounting in 2012, more than 14 years after the 1997 settlement. Plaintiffs further concede that under rule 4-100(B)(3) of the Rules of Professional Conduct, defendants were not required to keep the relevant records for more than five years after "final appropriate distribution" of the funds. The five-year period for retention of relevant records presents a reasonable outer limit on the time within which a client is entitled to an accounting under Business and Professions Code section 6091. Plaintiffs

do not propose any alternative.  Rather, plaintiffs appear to contend that an attorney is obligated in perpetuity to provide an accounting upon the client's request, even if the relevant records were lawfully destroyed decades ago.  That cannot be the law.

Finally, I disagree with the majority's description of the facts in two significant respects.  First, the majority states that plaintiffs allege that when they executed signature pages for the settlement, "they did not have the Master Settlement Agreement, the Master Release, or the confidentiality agreement."  (Maj. opn., *ante*, p. 16.)  I can find no such allegation in the second amended complaint.  The pleading does allege that "[d]efendants did not even provide a copy of the *entire* settlement agreement to Plaintiffs" (italics added), but it does not say how much of the settlement agreement defendants *did* provide.  If defendants gave plaintiffs part of the settlement agreement, then it is possible that the omitted parts were not material and their omission was not misleading.  Similarly, the second amended complaint alleges that defendants "instructed [plaintiffs] to sign signature pages and return such pages to [defendants]," but it does not allege that the signature pages were the *only* part of the settlement agreement that plaintiffs were given. Again, all of the facts constituting the elements of fraud must be pleaded with particularity.  (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1469.)

Second, the majority states that attached to the second amended complaint is "a document purporting to be a November 3, 1997 letter to the Prakashpalans" concerning the settlement.  (Maj. opn., *ante*, p. 5.)  What is attached to the second amended complaint, however, purports to be only the fourth page of a letter of unspecified length. That page refers to "allocation determinations" made by "Judge Smith" and various other matters, including "the Master Settlement Agreement."  It is impossible to determine whether anything on that page was fraudulent (as plaintiffs would have it) or suspicious (as the majority would have it) without seeing the rest of the letter.  Again, the burden is on plaintiffs to plead fraud with particularity.  The fourth page of that letter has no tendency, on its own, to show that they were defrauded.

For all of the foregoing reasons, I concur in the judgment.


ROTHSCHILD, P. J.