Filed 12/30/15  Edwards v. Corbalis CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| IRV EDWARDS et al., | B261002 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YC069741) |
| v. | |
| FRED F. CORBALIS III et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stuart M. Rice, Judge.  Affirmed.

Scapa Law Group, Robert B. Scapa, for Plaintiffs and Appellants.

Gaglione, Dolan & Kaplan, Robert T. Dolan and Martina A. Silas, for Defendants and Respondents.

* * * * * *

When homeowners are informed that the restrictive covenants they hired a lawyer to prepare and record are invalid, is their lawsuit against that attorney and his law firm for malpractice timely if it is filed more than one year after the foreclosure sale that invalidated the restrictive covenants and more than one year after they are told the covenants may be invalid?  The trial court ruled that the homeowner's lawsuit was untimely, and dismissed their complaint.  We independently conclude that dismissal is required, and consequently affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

The following facts are drawn from the allegations of the operative first amended complaint (FAC).

Plaintiffs Irv and Debby Edwards (collectively, plaintiffs) own a home in Manhattan Beach, California, with a "scenic shoreline and ocean view."  To preserve that view, they bought the property directly across the street (neighboring property) in 2006.  That same year, plaintiffs hired defendant Fred F. Corbalis III and his law firm, defendant Spierer, Woodward, Corbalis & Goldberg (collectively, defendants) to prepare restrictive covenants that would bind all future owners of the neighboring property to certain height and development restrictions.  Defendants eventually recorded three such covenants, in May 2008, July 2008, and August 2008.  In the meantime, plaintiffs had formed a limited partnership with a neighbor and, in February 2008, had transferred ownership of the neighboring property to that partnership.

By early 2012, the limited partnership had fallen behind in its mortgage payments; the lender sold the property to the Serrano family trust at a nonjudicial foreclosure on March 1, 2012.  In early March 2013, plaintiffs informed the new owners that the landscaping they planted would eventually violate the restrictive covenants.  The new owners consulted a lawyer, and prior to March 19, 2013, informed plaintiffs that, in their view, the foreclosure sale had "wiped out" all of the restrictive covenants because the covenants had been filed *after* the February 2008 deed of trust that they succeeded at the

2

foreclosure sale. Plaintiffs hired new lawyers, who on March 19, 2013 wrote defendants a letter explaining the new owner's claim that the restrictive covenants had been voided, seeking defendants' input, and demanding defendants case file.

In September 2013, plaintiffs signed a release and withdrawal, as well as a quitclaim deed, relinquishing any interest in the neighboring property.

## II. Procedural History

On March 21, 2014, plaintiffs sued defendants for legal malpractice based on their negligence in drafting and recording the restrictive covenants and sought more than $1 million in damages. After defendants demurred, plaintiffs filed a FAC, and defendants again demurred. The trial court sustained the demurrer, concluding that plaintiffs suffered "actual injury" on the day the foreclosure sale invalidated the restrictive covenants (March 1, 2012) and that plaintiffs were put on notice of that injury on or before the date their new lawyers wrote defendants regarding the invalidation (March 19, 2013). Because plaintiffs did not file their complaint until March 21, 2014—more than one year after either date—the trial court concluded their complaint was untimely.[1]

After the trial court entered a judgment of dismissal, plaintiffs timely appealed.

## DISCUSSION

## I. Demurrer

In reviewing the dismissal of a complaint on a demurrer, we assess not only "whether the [complaint] alleges facts sufficient to state a cause of action" (*Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 274 (*Davis*)), but also whether it "'shows on its face that it is barred by a statute of limitations . . .'" (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1454). (See generally Code Civ. Proc., § 430.10.)[2] In

---

[1] March 19th fell on a Tuesday in 2013, so the trial court's finding that the March 21, 2014 complaint was more than a year old does not implicate any of tolling rules for weekends or holidays. (Code Civ. Proc., § 12.)

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

making this assessment, we "assume the truth of all well-pleaded factual allegations" in the complaint (*Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 101), as well as the exhibits attached to the complaint (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1091). Our review is de novo. (*Davis*, at p. 274.)

A claim for legal malpractice is timely only if filed "within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission," and in no event more than "four years from the date of the wrongful act or omission." (§ 340.6, subd. (a).) This period is tolled if, among other reasons, "[t]he plaintiff has not sustained actual injury." (*Id.*, subd. (a)(1).) Put differently, plaintiffs' claim for malpractice is timely in this case only if it was filed within one year of (1) when they reasonably discovered or should have discovered the facts constituting malpractice, or (2) when they sustained actual injury.

### A.     *Discovery of wrongdoing*

The one-year limitations period "'begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.'" (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 818 (*Bergstein*).) The plaintiff "'need not be aware of the specific "facts" necessary to establish the claim'" (*ibid.*), "of his legal remedy[,] or [of] the legal theories underlying his cause of action" (*Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 42-43 (*Village Nurseries*)). Rather, the clock starts ticking once the plaintiff "has a suspicion of wrongdoing." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 685 (*Peregrine Funding*).)

In this case, the facts pled in the FAC conclusively show that plaintiffs had a "suspicion of wrongdoing" on or before March 19, 2013. Sometime between March 1 and March 19, 2013, the new owners told plaintiffs of their attorney's opinion that the restrictive covenants had not survived the foreclosure sale. By this date, plaintiffs should have suspected that "someone ha[d] done something wrong" in drafting and recording the restrictive covenants. (*Bergstein*, *supra*, 236 Cal.App.4th at p. 818.) Indeed, plaintiffs'

4

subsequent actions indicate that they *did* harbor such a suspicion because they went out and hired new lawyers, who then wrote defendants on March 19, 2013 to inform them of the defect with the restrictive covenants and to demand their case file. Thus, by March 19, 2013, plaintiffs either did or reasonably should have harbored suspicions that defendants had done a poor job with the restrictive covenants.

Plaintiffs raise two arguments in response. First, they argue that their new attorney's March 19, 2013 letter never used the word "malpractice" and merely sought more information. However, the law requires a *suspicion* of wrongdoing, not an *accusation* of wrongdoing. Second, plaintiffs point to an allegation that they added in the FAC—namely, that the first time they knew "or had reason to know of a potential claim for malpractice" was when defendant Corbalis, in April 2013, confirmed that the restrictive covenants had been voided. This artful pleading is to no avail because, in assessing a demurrer, we only accept as true the facts alleged the operative complaint; "we give no credit to allegations that merely set forth . . . legal conclusions" (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170).

### B.    *Actual injury*

For purposes of section 340.6, "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 742-743 (*Jordache*).) Because "'[t]he loss or diminution of a right or remedy constitutes injury or damage'" (*Shaoxing City Maolong Wuzhong Down Products, Ltd. v. Keehn & Assocs.* (2015) 238 Cal.App.4th 1031, 1037 (*Shaoxing*), quoting *Jordache*, at p. 744), plaintiffs were actually injured on March 1, 2012, when the foreclosure sale "wiped out" the right to enforce the restrictive covenants.

Plaintiffs level five criticisms at this conclusion. First, they argue that they did not know that the March 1, 2012 foreclosure invalidated the restrictive covenants until much later. However, a plaintiff's "subjective [knowledge] is irrelevant to the question of whether actual injury has been sustained." (*Shaoxing*, *supra*, 238 Cal.App.4th at p. 1038;

*Britton v. Girardi* (2015) 235 Cal.App.4th 721, 733 ["[t]he fact of injury or damage need not be recognized or noticed by the plaintiff"]; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 227 ["the statutory scheme does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed"].)

Second, plaintiffs argue that they were not actually injured until they signed the release and quitclaim deed in September 2013. They offer three reasons for this conclusion. To begin, they assert that their injury was speculative until that time. Although "speculative and contingent injuries . . . that do not yet exist" do not constitute "actual injury" (*Jordache*, *supra*, 18 Cal.4th at p. 754; see also *Fritz v. Ehrmann* (2006) 136 Cal.App.4th 1374, 1383-1384 [injury arising from negligence in drafting a promissory note speculative until such time as error causes damage]), plaintiffs were actually injured on March 1, 2012 because that was the date on which the property rights in the neighboring property were extinguished. Plaintiffs' subsequent *confirmation* of that injury when they signed the release and quitclaim deed is of no consequence, as "[t]here is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury." (*Id.* at p. 752.) Plaintiffs' citation to *Baltins v. James* (1995) 36 Cal.App.4th 1193, 1208, for the proposition that confirmation is always necessary is to no avail because our Supreme Court overruled *Baltins* on that point. (*Jordache*, at p. 761, fn. 9.) Plaintiffs next contend that their injury was not complete until they signed the release and quitclaim because, until that time, they still had the right to enforce the restrictive covenants as an equitable servitude. But an injury need not be complete to be "actual" (*Village Nurseries*, *supra*, 101 Cal.App.4th at p. 42 ["a plaintiff need not suffer a complete loss of a right . . . to sustain actual injury," italics omitted]); the extinguishment of the restrictive covenants alone was sufficient. And if the restrictive covenants remained enforceable as equitable servitudes and plaintiffs gave up that right, then any injury was caused by their own decision to sign the release and quitclaim deed—and not by defendants' alleged malpractice. (See *Oasis*

6

*West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820-821 [malpractice claim requires a "causal connection between the negligent conduct and the resulting injury"].) Lastly, plaintiffs again point to allegations that they added to the FAC regarding when actual injury occurred, but we give those allegations of legal conclusions no weight.

Third, plaintiffs argue that they did not suffer injury in hiring their new lawyers because there are no allegations that they were paying them attorney's fees. To be sure, incurring attorney's fees while trying to remedy a defendant's alleged malpractice can itself constitute "actual injury." (*Jordache*, *supra*, 18 Cal.4th at pp. 750-751.) But whether plaintiffs paid their new lawyers any fees is irrelevant in this case because plaintiffs had already suffered actual injury when the foreclosure sale extinguished their restrictive covenants.

Fourth, plaintiffs assert they have not suffered actual injury because the new owner's landscaping has yet to exceed the restrictive covenants' height restrictions. Putting aside the fact that the logical consequence of this argument is the dismissal of plaintiffs' lawsuit as premature, the argument also lacks merit. As noted above, the loss of the right to enforce the restrictive covenants is enough by itself to constitute actual injury. (*Shaoxing*, *supra*, 238 Cal.App.4th at p. 1037.) Such injury exists even if plaintiffs have yet to "sustain[] all, or even the greater part, of the damages occasioned by [the] attorney's negligence." (*Budd v. Nixen* (1971) 6 Cal.3d 195, 201.)

Finally, plaintiffs argue that it is inappropriate to dismiss their case at the demurrer stage because issues of notice and injury are typically questions of fact. Although these issues are often questions of fact, it is well settled that they may be decided on summary judgment "if the facts are undisputed" (*Adams v. Paul* (1995) 11 Cal.4th 583, 591-592) and may be decided on demurrer if the statute of limitations bar "'"clearly and affirmatively appear[s] on the face of the complaint"'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42). Here, it does.

**II.     Leave to Amend**

Plaintiffs lastly contend that the trial court abused its discretion in not allowing them the opportunity to file a second amended complaint.  We review this claim for an abuse of discretion (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), and find no abuse.  "'A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the [operative] complaint or by suppressing facts which prove the pleaded facts false.'  [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491.)  Because the dates underlying our analysis of the statute of limitations period cannot be altered in subsequent pleadings, "[n]o reasonable possibility exists that plaintiff[s] could amend to plead around the limitations period[]." (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 746.)

**DISPOSITION**

The judgment in favor of defendants is affirmed.  Defendants are entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
CHAVEZ

8